This is Randall May Intl v. Deg Music, Appeal 1367 May it please the court. Good morning, your honor. Please proceed. Thank you. What's the exact remedy you seek from us? The critical remedy we seek is the generation of a correct claim construction. Is that all you're asking us to do? No. What is the full extent and precise nature of the relief you're seeking? A summary judgment of non-infringement under either literal or doctrine of equivalence. How about based on the contract? I have trouble with the contract because I'm not sure of the jurisdiction that the court has. I hope that the court would take jurisdiction of it. This is a patent case, right? It was a patent infringement claim. So why wouldn't we have jurisdiction over the interpretation of a contract? Because it's an interlocutory appeal and there was a suggestion in our earlier motion to dispose of the bond. There was a footnote suggestion in the opinion saying jurisdiction doubtful on the contract in substance. But certainly because there was a permanent injunction, there's jurisdiction under the... On the question of relief, you seem to now be saying correct the claim construction and grant summary judgment of non-infringement right here at the court of appeals, right? And then with respect to the contract, you seem to be suggesting that, well, maybe something having to do with the contract would have to be further litigated below, right? Right. If this court has jurisdiction on... Assuming we have jurisdiction to do anything with the contract, you seem to be saying that would have to be remanded. I think that's probably the correct answer. But if I were to argue it, I'd say the problem with the contract is that it's a contract as interpreted by the district court. It's a contract and perpetuity never to challenge a patent. Even patents not issued yet and not related to the existing patent. What do you think the correct construction of the contract language is? I think it has to be limited to the patent it deals with. I'm terrible on numbers. 43 or whatever. Yeah. That it should be limited to a promise covenant not to infringe that patent and patents that issue out of that patent. In fact, I'm not even sure that that would be appropriate, but we certainly would concede that because the present patent, the 886... Judge Hatter seemed to assume that the language encompassed the patent ensued here, not just the patent cited by number in the agreement. Well, what he said was merely that the contract was unambiguous. And you'd have to infer from that that he accepted the other side's argument that the... Well, he found a brief, so he has to have accepted their argument that the scope of the agreement covered the patent now in suit in this case. Right. He adopted their interpretation of the contract that it applied to all patents. But if that's so, doesn't the following sentence on the covenant not to infringe say, does not infringe any and all patents? If you're taking a broad approach, isn't there a waiver and isn't there a release under paragraph 4A1? That's what I think. We argued that not to say that that's how the contract should be interpreted, but you can't change the same language from portion to portion in the contract because the results are absurd. So if we interpret the contract accordingly, then you don't care about claim construction. Correct. You're not infringing. That's right. I can't argue in good faith that any contract was intended to do that. In California, more than any other state I believe, contracts are interpreted according to intent, not as literally as in some other states. I thought in your brief your main argument about the contract had to do with the exclusion or the failure to consider testimony about intent. No, no, no. There was some testimony about intent and we believe it was a legal error. Initially, the court had excluded our declaration of our client about what was done in a dispute that arose after the initial contract was reached that implied a particular interpretation. And we think the court did not consider that. That's not the main defect vis-a-vis the contract. The main defect is the court got it backwards as to scope. The court said the contract was unambiguous. That was the threshold decision that kept it from considering the evidence we submitted on intent. Is your position that the contract is ambiguous? Absolutely. And it's ambiguous because it leads to absurd results. And is it also your view that it's ambiguous because two consecutive sentences say the opposite things? Yes. Yes, you cannot... So what are we supposed to do with the contract? We send all the contract-related issues as to liability and damages back to Judge Hatter and tell him to start all over again? Preferably with the instruction what the contract does mean because that is a question of law. So then you want us to change the claim construction and issue some rulings about infringement and change the contract instruction and then remand for the rest on the contract to be done by Hatter? If the court is willing to consider the contract construction, yes. And if the court has jurisdiction of it. Your opponent says we have no jurisdiction with respect to the contract issue because he says the final except for an accounting provision only applies to patent infringement claims. You disagree with that? Or do you disagree with my characterization? No, no, no. I think the characterization is perfectly accurate. I think the responsive argument is that the contract has become interwoven with the patent issues here in that we're applying issues of validity and issues of infringement that are drawn from the contract. The contract has been used as a surrogate for Section 285 on fees. We don't have to show an exceptional case to get fees. All we have to do is prevail on the case and therefore we get all our fees in the case. That's the whole reason for existence of the contract claim. Would you turn your attention, if you would, to the claim construction and the principal issue? Yes, I'd be happy to. First of all, this is more de novo than the average de novo standard of review in that there is no opinion of the court to look at, the court below. We're really working on an empty slate here because we have an a priori claim construction with no explanation of what it means. It's not quite right. There was no explanation how he got to it. Correct. But there is an explanation of what he thinks the word means. I don't dispute that. There is a claim construction. Usually it's useful to follow the district court's reasoning and I think they're supposed to under Markman to explicate what the mean is. The interpretation that the court reaches is contrary to the basic rules of claim construction. The claims themselves don't say much. It's an inventor coined term. Are we talking about the word changeable? Changeable or adjustable. And is it your view that that cannot exclude something that's welded because it's not changeable? Correct. You have to think about that. Well, it's the changeable or adjustable that's hard to keep straight in my mind because it's either one. Yes, but certainly the welding, if the court accepts our construction that shoulder supporting members means the shoulder straps, which is consistent throughout the specification, then by welding the top of the vest portion to the separate shoulder straps, that means the shoulder straps are neither changeable nor adjustable. Unless you have an acetylene torch. Correct. And that can't be what the claim language was intended to cover. Without being facetious, the claim construction as it is is pretty close to that. You cannot. In fact, I made my slippery slope argument in our brief and it said under their interpretation and under the court's construction, it doesn't matter where adjustability occurs as long as there's some link ultimately to the shoulder members. Then even these J hooks that hang on the bottom because they are adjustable and changeable, because they're connected somehow to the shoulder straps, they infringe as long as there's a back brace. I believe every example virtually of drum carriers shows shoulder straps in one fashion or another and a means of adjustment. They've almost gotten a patent on carriers that just have a back piece. It's hard to come up with a practical carrier that doesn't adjust. Now, on the agreement, as I understand it, there were several different, maybe three or four different kinds of breaches found by Judge Hatter. It was a breach to challenge the validity. It was a breach to infringe. It was a breach to allege antitrust and patent misuse because of the releases. Now, if we overturn the infringement finding, that removes that breach. But doesn't it still leave the other breaches about challenging validity or alleging antitrust, et cetera? No, because I think if the particular phrase that the judge relied on in the contract is common to all those paragraphs, it appears four times, and that's just the standard litany that was borrowed from the PTO assignment form and injudiciously used by the draftsman instead of saying it applies to this patent. He used assignment language, which opened it up to all the future. And that's what the court said was literally unambiguous. Judge Hatter did. But under the rationale is you can't read a contract to do something absurd and probably can't read it if there's an option to do something that's against public policy. Surely, a determination that you will never infringe a patent ever issued to somebody, even future applications, there are some public policy implications to that that are pretty serious. So the result of that interpretation... I don't think you're with me. I'm saying if you went on infringement, then that can't be a breach, so that goes away. But it seems like arguably it could still be a breach that you pleaded invalidity, grounds, and antitrust. No, because the language in the phrase that they're relying on for the covenant not to infringe is also in the covenant or the promise of the admission of validity of this patent and all future patents. It's the same language. And to be consistent, it would have to be changed along with it to be confined just to the particular patent issue, the 583. So under your view, correctly construed, the contract can't have any application with regard to anything for the patent in suit. Correct. Well, then why do we need to remand? If we agree with your interpretation of the contract, why isn't the case over? Should be. Well, I thought you wanted us to remand on the contract issues, even though you wanted us to grant you summary judgment of non-infringement. So I'm trying to figure out which is it you want. I probably had an excess of caution about the jurisdiction issue. Well, of course we can't decide anything if we don't have jurisdiction. You can be assured that if we conclude we don't have jurisdiction over an issue, we won't decide. I'm not going to argue you don't have jurisdiction, and I've made the argument why I think you probably do. All right, let's hear from the other side, and then we'll give it back to everybody. Thank you. Thank you. Good morning and good year, and may it please the court. Peter Afrasiadi on behalf of the plaintiff and appellee, Randall May International. Your Honor, let me address the first question you raised with regard to the contract. I think you better start with the claim construction. It looks to me like the claim construction is blatantly, inexplicably, clearly wrong, backwards, crazy. So show me where I'm wrong about that. It says the shoulder part has to be replaceable or adjustable, and the accused product, both in the front and the back, the shoulder pieces are welded to the next piece. So common sense, they're not adjustable, they're not replaceable, therefore there can't be infringement. So he got the claim construction backwards, and he got the infringement analysis backwards as a consequence. So unless I'm missing something, we've got to reverse on the infringement finding. Let me explain, Your Honor. The shoulder supporting members do not have to be independently changeable as a piece alone. And you get that from Claim 19. The dependent claim specifically claims changeable or adjustable shoulder supporting members that are welded to the back bar. So by definition, they can't be removed independent of every other component of the carrier. That's from Dependent Claim 19, which is a limitation that can't be ignored. So you have a situation where the DEG is trying to read the word independently into the claim language before the word changeable. That's not in there. Canons of claim construction say, given Dependent Claim 19, you can have changeable shoulder supporting members when those shoulder supporting members are welded to another piece. And that's why the narrowest... I don't see the word welded in Claim 19. Your Honor, Claim 19 says the securing mechanism from Claim 17, wherein the securing mechanism locks the orientation of the shoulder supporting members. The patent specification talks about locking of orientation and specifically talks about spot welding. And that is at... But in several places, it's talking about removably secure. Well, certainly the patent claims the ability to have a back bar that can be attached on and removed if you want to have a removable back bar. It also claims having a back bar, and those are some of the other Dependent Claims. But it also talks about having a back bar where the orientation is locked and fixed. And that is done, as the specification says, by welding. I mean, it specifically talks about spot welding and other forms of permanent affixation. If it's permanently affixed... Would you show me where that is in the specification? Absolutely, Your Honor. Is it your position that the shoulder piece can be welded both front and back and still in frame? Absolutely, Your Honor. It's... And you get that because you cite an example where it's welded in the back, but not in the front. So I don't follow your logic. Well... You seem to be saying if it can be welded in one place, then it can also be welded in both places and still in frame. What I'm saying... If it's welded in both places, how can it be adjustable or removable? Well, if... What I'm saying is if it's... It can be changeable and still be welded to something else. That means... And that's what we have here. Front and back? Well, the patent only claims back. But all that proves is that you don't have to have independently removable straps. And so the narrowest basis to go here, the narrowest basis to affirm, is to say, as we've shown in the pictures in the undisputed deposition testimony, you can take off dead shoulder-supporting members, replace them with the silver ones, as we showed in the pictures in the deposition testimony, and their product now has new, changed shoulder-supporting members. But if they're welded... If the edge of the shoulder piece is welded to the back piece and welded to the breast piece, how is that adjustable or removable? Well, it's changeable because it doesn't have to be independently removable. It's adjustable because... It's not independently removable versus some other kind of removable. If it's welded, it's, as a practical matter, not removable at all if it's welded front and back. Well, the word's changeable, and they are changeable. If you have an acetylene torch and you cut through the weld on the breast piece and you cut through the weld on the back piece, yes, then you can change out the shoulder piece. But that seems to be an absurd reading of the claim language, which seems to contemplate a much easier way to replace or alter the shoulder piece. Well, that's why Dependent Claim 19 is so critical. It talks about having a permanently affixed back bar. That means when you are changing shoulder-supporting members with a permanently affixed back bar, you're not taking a torch. You're taking both pieces off and putting new ones on. And that's what we're talking about here. The only difference is, instead of the T, they've got the Y and the V that they've welded. But you're still removing, even assuming shoulder-supporting members are shoulder straps, you're still removing them, and you're changing them for new ones. The fact that other pieces are being changed along with it doesn't mean it doesn't infringe. That's why Dependent Claim 19 is so important. And, Your Honor, in answer to your question, Column 5, 34 to 40 talks about welding to lock the orientation. It specifically says, In another embodiment, the back member is secured to the shoulder straps. The shoulder straps are changeable or adjustable to allow for users of different sizes. The back member can be secured using a variety of permanent joining methods, including welding, spot welding, bonding, or similar joining methods. I'm still hung up on whether the fact that the back piece could be welded to the shoulder harnesses and there could still be an infringement means that if the breast piece is also welded, there can still be an infringement. I don't see how the one follows from the other. Well, in this way, Your Honor, the patent only claims changeable shoulder supporting members, and it claims that without claiming that they have to be independently removed of everything else. And we get that from what I just explained on Dependent Claim 19. So that just means that the claim envisions clearly that you can remove more than just the straps, and you still have changeable shoulder supporting members. So whether you remove something else with it doesn't alter the fact that you're also removing the shoulder straps or the shoulder supporting members. It doesn't change that analysis at all. In other words, and another way to look at it is if you look at Figure 3, the adjustability is at the bottom of the T in Items 44. That's where the adjustability is occurring, and it's a T. What you have here is a Y or a V, so you just change the shape of the T a little bit and put some spot welding on in order to say, aha, we don't adjust up here. But the adjustability was never claimed to have to occur sort of on the upper body up here. It was claimed to occur on that piece hanging over the shoulder, which where connected supports the balance of the device. And Figure 3 clearly envisions that the supporting is occurring at the bottom of the T. I'm totally baffled by your argument. If I'm following the logic of your argument at all, and probably I'm not, you're basically saying the shoulder piece is changeable if you could take off the entire apparatus and throw it away and come up with a new apparatus with a new shoulder piece. No, Your Honor, I'm not saying that. Well, then I don't see what you are saying. Okay, if the entire shoulder piece and any attached pieces, front and or back, can all be removed and replaced, and you're then showing a changeable or adjustable shoulder piece. What I'm saying is, when you have the shoulder straps, which are welded to this Y in the front here, that act of welding doesn't mean that the shoulder straps are no longer changeable. I'm not saying if you take off the whole device and put an entire new device on. But the logic of what you're saying would lead to the conclusion that taking off the entire device and replacing all of the pieces, including the shoulder piece, gives you an adjustable shoulder piece. Well, no, because if you took off the entire device and put on a new one, you wouldn't even have the same device anymore. This is why the adjustability and the point of connection is so important. You have the balance of the device, which allows adjustment to raise these really heavy drums up and down to affect the weight load on the person. The balance isn't being changed. If you had a monolithic piece, for example, it wouldn't infringe, and you would take it off, put on a new one, it's no big deal. Here, you have the balance of the device that allows all this adjustability, and you have the ability to change the shoulder straps or shoulder supporting members for people of different sizes. And so you simply remove the top piece, put the new top piece on, and you now have changed shoulder straps. Counsel, do you defend the court's grant of a summary judgment for breach of contract? Yes, Your Honor. If that's the case, it's because you interpret the language of the covenant not to infringe as being very broad, right? Well, I mean, the language is not ambiguous. It says what it says. But doesn't the following sentence say this device doesn't infringe? And doesn't the release constitute a release of all patent claims? This is a critical point, and let me explain. The second sentence talks about the product that doesn't infringe. It's not the product at issue in this case. The contested DAG Music product in Exhibit 4 to this 2002 settlement agreement is not the P-20 product at issue in this case. Well, how about the release then, 4A1? Yes, and the release is captioned only from the beginning of time to the time of the agreement. It simply says any product you've made from the beginning of time until today, we will agree that it doesn't infringe this patent or any other patent that we get in the future. But it's from the beginning of time until 2003 when this agreement was entered. The product at issue here came out in 2003. That sentence says which may be granted. Where is the limitation of time? On line, it's the 3rd, 4th, 5th, 7th, 8th line up. From the beginning of time to the date of this agreement? From the beginning of time to the date of this agreement. So you're giving a release from the beginning of time to the date of this agreement that we won't assert any patent claims as to any product. The product existed before the date of the agreement. It's being released not only under the 583 patent, but what the parties were clearly saying is if I get future patents, I'm not going to come back to you on those future patents on this product at issue in this old lawsuit. But it doesn't say that future products you come up with that aren't even out today, I've got this sort of prospective release that applies to things that haven't even happened yet. The release is cabined like all releases, beginning of time until the date of the agreement. That's why there's no incongruity at all in the construction of the contract. The release is only dealing with historical things up until the time of the agreement. And the covenant not to infringe agrees that this product, a different product, the one not at issue in this lawsuit, doesn't infringe. That's all. No one ever said that a product you haven't made... And you're saying the agreement not to infringe refers generally to any products. In other words, not just the contested one, but the one before us here. No, you're saying it doesn't because the one before us here was created after 2003. That's correct. The product, the P20 product at issue in this lawsuit, and the best place to get this in the record is... Excuse me for one second. It's on the Randall May declaration, which is not contested, that deals with this issue when it was written before the district court and delineates very clearly the product that was at issue then and the product at issue today. And the product at issue in the 2002 suit was one that didn't have changeability or adjustability and they welded it and made a monolithic vest. How could a provision be interpreted to say that we agree that we will never infringe any patent for any product? The law imposes that obligation on everyone not to infringe any patent. The U.S. Patent Code requires that of all of us. And that's what the law says. The agreement memorialized, in effect, the law, and what it did that's important is create a fee clause. So there's a right to fees if you do infringe in the future. That's all it did. It basically took the English rule and imported it into these parties' relationship to opt out of the American rule and opt out of the patent code that makes it harder to get fees. But DEG, just like everyone, is under an obligation under the law not to infringe any patents. So there's nothing that violates... But that's not by contract. That's under the patent law, which leaves for the future the question of infringement as well as validity. This is just a blanket statement. I won't infringe with any product any patent. And how are these parties bound with respect to other people's patents? Well, they're not bound with respect to other people's patents at all. I mean, the agreement's only between Randall, May, and DEG. I mean, the agreement doesn't give right... I mean, for example, if John Deere Company sued DEG for patent infringement, the John Deere Company couldn't say, well, we have a right to fees because of you, DEG, your agreement with Randall, May, because we're a third-party beneficiary. It doesn't make any sense. This is an agreement only between these two parties. All it does is memorialize what the law imposes on everyone. You're not allowed to infringe other people's patents with products you make. And this agreement simply says that. And it says if you do, there's a fee provision. That's all it did. And again, it's absolutely critical that there be no confusion as between the product at issue under the settlement agreement, which was a different product, and all the exhibits of the settlement agreement show the pictures of the product and the product at issue here, which is a P-20. And one of the exhibits to the Randall, May declaration, and I apologize, they don't have it right in front of me, but it puts before the court, and it put before the district court, and it was uncontroverted to help the court understand this, catalog pictures of the products at issue in the old original case and the ones at issue in this case, two distinct products. The old products are... Distinct because you can see they're different or because they were created in different time frames, one before 03 and one after 03? Both. One is a monolithic vest. There's no adjustability. There's no means to adjust, and there's no changeability. Monolithic welded vest. One is the P-20 that was created after the settlement agreement and has multiple levels of adjustability, and it affords the ability to change and replace with new shoulder-supporting members. Is the logic of your position that if the front components of the device, let's say, had five different descending pieces, is the logic of your position that if any of those pieces can be adjusted, that that means that the shoulder piece is adjustable? No. I don't understand what your claim construction is. The reason I say no is because the patent, if you look at column four, line 45, I think it's around 45 to 50, talks about the carrier structure and the components of having shoulder supports and a vest portion. If there's adjustability down on the stomach, we're not saying that those are adjustable shoulder-supporting members. The adjustability, though, isn't the adjustability on the J-rods that we were talking about. It's adjustability up here, and that's why it's not the vest or the belly button. When you say up here, you've got to be more specific. It can't be the bottom piece, but it doesn't have to be the top piece either? Well, no, it isn't. It could be some middle piece? Well, it is. It's the top piece. It's the piece that hangs on the shoulders and attaches at the top of the person's body, the middle of the person's body around the sternum. That's where the adjustability is occurring. It's not occurring on the belly plate. If the adjustability is only occurring on the belly plate in your hypothetical, we would not be asserting infringement. We would not be arguing that that is a changeable, or sorry, we would not be saying that's an adjustable shoulder-supporting member because of the adjustment occurring on the belly plate. There's no adjustment on the top piece, right? Because it's welded to the shoulder piece. Well, no, but that's just it. The shoulders, figure three is a good embodiment to look at. You have shoulder straps and you have a T. The vest and the belly comes below the T. Here we have a Y. The adjustability is on the Y. Well, how can the adjustability be on the Y if the Y is welded to the shoulder pieces? Well, that's just it. The whole thing is a shoulder-supporting member, but the adjustability is not occurring down at the bottom, and that's where, if you look at the patent specification, it's... Where is it occurring? It can't be occurring on the Y. The Y is welded. Well, but the adjustability, it's not that the straps themselves are adjusted laterally, for example, or forward or backwards. I mean, that's one concept of adjustability. The patent site I just gave you, column 4, line 45, talks about adjustability as being a relative adjustability, and that's what's important about the invention. It's the relative adjustability between the lower portion of the belly, where these very, very heavy drums are held, and the upper body. And in order to get that relative adjustment, you adjust the relative location of the two, and the adjustment's occurring on the ends of the shoulder-supporting members. The end here happens to be, instead of a T, which figure 3 claims the adjustment on, it happens to be a Y. I mean, that's the difference. It's a Y instead of a T. But figure 3 specifically contemplates the adjustability occurring at items 44, and that's adjustability. It doesn't have adjustability up on the top of the body. All right. Well, we've given you some extra time. Let's hear some rebuttal from Mr. Mark. Mark, you're on. I have really just three points to make. The back brace welding argument, I don't know the legal term, but the common term is it's a red herring. Whether the back brace is welded or not has nothing to do with the adjustability or changeability that is the limitation of the patent, because if you take off the back brace, nothing happens. The shoulder straps are still there, and they're assembled to the rest of the piece. The back brace is the end of the line. There's nothing that its removal, it has no effect on how long the carrier is, because we're talking about where the drum is in relation to the drummer's arms, basically, and that has nothing to do with the position of the back brace. The contract, I think Judge Gorey mentioned it, the language, if you take it really literally in the contract, it is a promise not to infringe anybody's patent ever. We thought that was just too absurd an interpretation to impute to Judge Hatter, but that is, if you're going to be literal about it, which you was, that's what it literally says. Your opponent says that's the law. I just don't see how it could ever be an enforceable issue. It's almost a gambling contract. I agree to obey the law. What's your third point? The third point is a shortcut, I think, on the case to all his arguments. We argued in our reply brief that the first two patents in the genealogy of the 886 patent, there was a break, a hiatus, between the issuance of the patent and the filing of the later applications. Is that only in your reply brief? Yes. That's not a proper ground for appealing. I'm sorry? That's not a proper ground for appealing. No, they raised the issue of the 257 in their opposition brief, the 257 patent, which has an image in it that is on, there's a picture of it in their brief, at page 22 and 23, where they said this prior patent of ours in the chain has figure 27. Here it is. It's at page 23. I'm happy the podium is close. It has a telescoping bar here, analogous to our best portion, and they say this proves that it doesn't matter where the point of adjustment is. Okay? We discussed it in the reply brief in light of a piece of unsighted prior art, but with the declaration of Mr. Hoover, it arose in the... In any event, it doesn't sound like rebuttal. What I'm saying is this is prior art. It's prior art, which affects the infringement issue in that it wipes out any argument under the doctrine. All right, thank you both. We'll take the appeal on your advice. I'm sorry. I have one small factual point, and I apologize, if I may. The argument about the picture of the image in the contract is correct, that the original contract had an image that says this does not infringe, and it wasn't the 886, but Mr. Schaefer's declaration about the same issue shows letters where there was an agreement that the exact design, the accused design, they agreed did not infringe. Now, whether that was an amendment to the contract or not, who knows, but it was incorrect to say that it did not apply to the 886. Thank you. Can I just give you the citation I didn't have at the podium, if you'd like it? Yes. The declaration with the pictures is A3712 through 3718. Thank you, Your Honor. All right, thank you. The appeal is submitted. Thank you. All rise. The honorable court is adjourned tomorrow morning at 10 o'clock a.m.